# Exhibit A

COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT
SUFFOLK SUPERIOR COURT

Dan Howitt,

        Plaintiff,

v

Somerville Housing Authority,
City Of Somerville,
Housing & Urban Development, Boston,

        Defendants.

## COMPLAINT

| | |
|---|---|
| 2 | PARTIES |
| 2 | JURISDICTION AND VENUE |
| 2 | INTRODUCTION |
| 3-10 | FACTS |
| 11-13 | CAUSES OF ACTION |
| 13 | REQUEST FOR BENCH TRIAL |

## PARTIES

(1) Plaintiff: Dan Howitt
37 Bay State Road #5
Boston, MA 02215

(2) Defendant 1: Somerville Housing Authority
30 Memorial Road,
Somerville, MA 02145

(3) Defendant 2: City Of Somerville ("City")
93 Highland Avenue
Somerville, MA 02143

(4) Defendant 3: Housing & Urban Development, Boston ("HUD")
10 Causeway St #3
Boston, MA 02222

(5) Plaintiff is a resident of Massachusetts.

(6) Defendant 1 is a public entity in Massachusetts.

(7) Defendant 2 is a public entity in Massachusetts.

(8) Defendant 3 is a public entity in Massachusetts.

## JURISDICTION AND VENUE

(1) Via MGL c214 s1 and MGL c231A s1, this court has subject matter jurisdiction.

(2) Via 42 USC 12181, and MGL c272 s92A, the defendants are places of public accommodation.

(3) The venue is proper because throughout the time of the issues of the case, I lived in, and still live in, Suffolk County of Massachusetts.

## INTRODUCTION

(1) I receive SSI, MassHealth, Supplemental Nutrition Assistance Program, and a Section 8 Voucher. I am diagnosed with marked Autism Spectrum Disorder (DSM-V, 299.00 (F84.0)), marked Major Depressive Disorder (DSM-V, 296.33 (F33.2)), and marked Post Traumatic Stress Disorder (DSM-5, 309.81 (F43.10) secondary to chronic disability based social abuse.

I present this case in the below Facts section.

## FACTS

(1) I informed Somerville Housing Authority ("SHA", which is an office of the City Of Somerville) and HUD Boston, via email, in immense detail (thousands of words of text) of the following since mid 2023: Since December 2024, I have sought, for a vast array of highly medically relevant reasons, to live at the Kendall Hotel in Cambridge, MA. The reasons include my substantial medical need for (a) a quiet living environment, (b) one that is near (within walking distance) of Massachusetts General Hospital, where my array of physicians are), (c) one that does not have any health code violations, (d) one that does not involve landlord abuse, (e) one that has 24 hour a day on-site staff to contend with any possible noise problems, and (e) one that is fully

2

furnished, with utilities included, and which offers on-site food options (an on-site restaurant, and 7 days a week of a 2 hour per day included breakfast buffet). The hotel, as I have confirmed by staying there briefly in the past, provides for the above.

(2)	I informed SHA and HUD Boston, via email, in immense detail (thousands of words of text) of the following since mid 2023: I have extremely severe and disabling sensory symptomology, including extreme involuntary sensitivity to noise (and my earplugs do not help with many noises, such as stomping on the floors, parties, loud music, slamming doors, barking, other impact noise on the floors, walls, and ceilings, etc.

(3)	I informed SHA and HUD Boston, via email, in immense detail (thousands of words of text) of the following since mid 2023: Since moving to the Boston area in February 2014, I have had approximately 12 rentals, including in buildings of all kinds, and small homes of all kinds, and each has consisted of (a) severe and unpredictable in-building/house noise at all hours, (b) substantial health-code violations, (c) and substantial landlord abuse, including criminal harassment and criminal stalking, upon my informing the landlords of (a) and (b). The docket listing for Eastern Housing Court shows 12 cases that I was involved, two of which are ongoing. Most are of my past attorneys and my own attempts to hold my landlords accountable for MGL and CMR violations; and others are of various landlords engaging in retaliatory lawsuits. I paid rental amounts from $1,500 to $3,800 per month. These 12 cases are about only approximately 1/3rd of my past landlord abuse matters, most of which I did not present to attorneys nor a court.

(4)	I informed SHA and HUD Boston, via email, in immense detail (thousands of words of text) of the following since mid 2023: In mid 2023 onward, I stated that I medically cannot endure (3) any longer, and that therefore it is medically necessary for me to live in a highly controlled environment, which has a higher cost.

(4a)	I informed SHA and HUD Boston, via email, in immense detail (thousands of words of text) of the following since March 2024, and especially from December 2024 to the present: My current landlord, about whom I have a complaint in this court (1:24CV13204JCB) regarding her atrocious florid emailed and verbal disablism, explicit threats, attempted forceful entry, severe harassing smashing of my door 30+ times while chanting obsessive repetitive frightening statements at me, talking at me through my door while I am 8 feet away at my desk, and other abuses against me, is a grievous abuser; and I told SHA and HUD Boston that I am as such am in dire need of a new apartment.

(5)	I submitted requests for apartments that were $4,500 to $5,000.

(6)	SHA granted me a 120% "exception payment standard"; but this was still $750+ below the above costs.

(7)	SHA did not provide a proper disability based reasonable accommodation requests to HUD Boston regarding the above (5).  I asked SHA for HUD Boston's emails to them about SHA's requests, and the emails show that SHA did not do what they request, namely provide a "formal" request.

(8)	SHA never provided me with any of HUD Boston's decisions about my reasonable accommodation requests, surely because HUD Boston never made such decisions, surely because SHA either did not, as they are required by USC and CFR, convey my requests to them, or provided inadequate requests .

(9)	SHA (Matt Lincoln and Emily Eschmann) via email in late 2023, and again in May 2025, referred to my requests for $4,750 to $5,500 apartments as "not reasonable", and in doing so neglected that my requests (a) do qualify for "Rent Reasonability" (24 CFR 982.507; 24 CFR s578.49(b)(2)), and (b) are required to be submitted to HUD Boston, who (c) is then required to submit them to HUD Headquarters for a final decision.

(10)	SHA did (9) because they do not believe, via disability discrimination in violation of 42 USC s12132 and MGL c272 s98 that my mental illness disabilities deserve to be medically accommodated.

(11)	The perhaps strongest demonstration of this is SHA's intentional unwillingness/neglect to abide by the requirements of 24 CFR s982.503(d)(5) and 42 USC s1437f(o)(1)(d) by submitting complete disability reasonable accommodation requests to HUD Boston, including asking me for a statement from my physician/clinician, and ensuring that the request is formalized for HUD Boston as they require.

(11a)	SHA obtained my 2023 social worker's statement, but did not provide a complete enough request for HUD Boston, because HUD Boston's Valerie Turner via email stated that the request had to be "formal".

(11b)	SHA via malicious neglect evaded this critical requirement of such requests in April-May 2025.

(12)	In early May 2025 to the present, I contacted HUD Boston's Terri Green myself, and exchanged a multitude of emails with her.  She in violation of the above USC and CFR, stated that SHA is who determines whether I can rent the apartment in the hotel (which is being provided to me at a severely discounted rate of $5,500 (it typically would be $8,000+).

(13)	SHA, per the above CFR and USC, does not have the authority to process requests for payment standards of greater than 120%.

(14)	The payment standard for the above hotel is approximately $3,450 per month given the inner-Boston zip code; and 120% of that is approximately $4,150.

(15)	HUD Boston regularly grants 140% payment standard amounts, which would be approximately $4,830.

(16)	140% is not the upper limit; and each case has to be assessed for its own complexity.

4

(17)     SHA has a considerably lower payment standard system than the Cambridge Housing Authority and Boston Housing Authority.  $300-$400+ lower, which would bring the above amount to approximately $5,250.

(18)     I asked SHA a multitude of times since mid 2023 to transfer my case to either of the above housing authorities due to (17), and SHA, to the present, has stated that the other housing authorities will likely not take my case, which is false, and stated via a malicious desire to harm me.  This is consistent with SHA's overall desire to abuse me.

---------------------------------

(19)     The above hotel offered a smaller studio apartment to me in December 2024 at $4,100 per month.

(20)     Given that I was declined by SHA for the $5,500 one bedroom apartment, on 5/6/25 I pursued applying for the studio.

(21)     From that date onward, to the present, via many emails, I asked SHA for clarity on whether the studio would pass the required inspection, given that it does not have a kitchen, and instead would have a kitchen-like set up, namely a small refrigerator, microwave, and the bathroom sink would be used as the kitchen sink.  I sent SHA a clear 1 minute video of the unit that shows the entire unit.

(22)     Despite that the above is a simple issue, SHA, consistent with their above discussed malicious neglect, did not discuss the issue with the inspection company that they use, namely McCright Associates, and let the issue remain vaguely discussed, and unaddressed, until 5/28/25, despite that for 3 weeks and 1 day I had been planning to move to the unit.

(23)     On 5/28/25, SHA abruptly told me that it did not pass inspection because of the lack of a two sinks, one of which had to be outside of the bathroom.  This simple issue could have been fully addressed on 5/6/25.

(24)     3 weeks 1 day of my time was completely wasted - time that I could have used to try to address the above inspection issue, and, or, look for another apartment.

(25)     SHA (Matt Lincoln) in ignoring the above (4a) clearly via their malicious desire to maximally cause me to suffer harm.

(26)     In October 2024, I submitted a complaint to SHA about my landlord's abuse, which is also submitted by men and disabled persons, despite being called Violence Against Women Act (VAWA).  SHA and HUD have failed to process my complaint, including despite my four inquiries since the above date about the status of my complaint.  SHA stated that they have my complaint, and that is the end of the matter.

(27)     In doing this, SHA clearly is violating 42 USC s12132 and MGL c272 s98:  Consistent with their above malice, they clearly do not believe that I deserve the protections and relief of the VAWA process.

5

(28)        Also on 5/28/25, I asked SHA if, if I provide a portable sink in the studio, this would suffice, and I have not received a reply yet.  There are an abundance of such sinks publicly available, which contain a large supply of water at the base, and look like and function exactly as standard sinks, and are approximately the size of a 3 foot high narrow rectangular box.

----------------------------------

(29)        For background:

Due to the three 24 hour emergency notices to repair that Boston Inspectional Services (BIS) served to my landlord shortly after my move-in of 11/2/23, and due to my landlords four full months of neglect of this, and that BIS did not enforce the violations (highly illegal low heat; severe lack of window weatherproofing, dysfunctional windows), I began to legally per MGL withhold my mere 9% of the total rent (my voucher pays 91% of the rent).  My landlord embarked on a retaliatory eviction action, concurrent with engaging in emailed and in-person severe disability discrimination, for which I have case 1:24CV13204JCB in this court.  My then attorney Charles Reid, who was suspended by the Board Of Bar Overseers (BBO) three times in 2024, and most recently in November 2024 per my complaint to the BBO's Ken Luke, committed severe attorney malpractice against me, for which a default order has been entered against him regarding my pro se case against him in Suffolk Superior Court (2484CV02809).  The judge of my landlord's case against me, because I was unable to attend the bench trial, and because of Reid's malpractice, judged in favor of my landlord, which is being appealed by attorney Joseph Ross.

(30)        Due to the above judgment, SHA terminated my voucher.

(31)        I rapidly submitted an appeal with SHA, and sent them dozens of filings and dozens of exhibits.

(32)        Since October 2024, they have made two hearing-appointments with me, spread over three months, regarding my appeal of their termination.  Both Ross and I prepared extensively for the hearings over many days, only to be told by SHA on the day of the hearings that they were cancelled.

(33)        This has caused me to have to endure prolonged severe distress about the status of my voucher.

(34)        SHA stated that they will wait for the result of Ross's appeal to decide on the status of my voucher.

(35)        However, the appeals process still has not begun, and Ross states may take 1-2 years.

(36)        Regardless, my appeal with SHA is separate from a court appeal, and should be decided by SHA independently.

(37)        I believe that SHA is doing this to cause me chronic severe psychological distress - that is, living with the horrid uncertainty about a crucial aspect of my life, namely my voucher.  This is consistent with SHA's overall desire to abuse me.

--------------------------------

(38)	Per my case in Suffolk Superior Court (2584CV00805), I had to sue the above hotel for engaging in Source Of Income Discrimination in violation of MGL c151B s4(10) against me; and I succeeded in obtaining a preliminary injunction ordering them to rent to me. Now I have to endure the above abuses of SHA and HUD.

--------------------------------

(29)	24 CFR s982.503(d)(5) (emphasis is added in bold):

"A PHA [Public Housing Agency] may establish a payment standard greater than 120 percent of the applicable FMR [Fair Market Rent} as a reasonable accommodation for a person with a disability in accordance with 24 CFR part 8, after requesting and receiving **HUD approval**."

(30)	Regarding the above "HUD approval":  24 CFR s982.3 - HUD (emphasis is added in bold):

"The HUD field offices have been delegated responsibility for day-to-day administration of the program by HUD.  In exercising these functions, the field offices are subject to HUD regulations and other HUD requirements issued by HUD headquarters.  Some functions are specifically reserved to **HUD headquarters**."

(31)	42 USC s1437f(o)(1)(d) (emphasis is added in bold):

"A public housing agency may use a payment standard that is greater than 120 percent of the fair market rent as a reasonable accommodation for a person with a disability, but only with the approval of the **Secretary**.

(32)	Regarding the above "Secretary":  42 USC s1437a(b)(8):

"(8) The term "Secretary" means the Secretary of Housing and Urban Development."

(33)	The above is about the relationship between me as the client (the requester), SHA, HUD Boston, and HUD Headquarters.  Again, SHA and HUD Boston engaged in malicious (harmful) disability discrimination against me by not following the above protocol in the ways that I discussed.

(34)	On 5/21/25, HUD Boston's Kara Norman, who is one of the directors, and whose contact information I found via research, replied to me with the following, which confirms the above protocol:

"An exception payment standard request is submitted by the PHA [Public Housing Agency] to the field office. We do the initial review and the[n] submit to HQ [HUD Headquarters] for a final decision.

(35)	Again, Terri Green, via malicious discriminatory negligence, did not do this.

(36)	On 5/8/25, I emailed Green asking if I could convey my matter to the director of HUD Boston.

(37)	She fraudulently stated that she is the only appropriate person at HUD Boston for me to contact, and that there is no director for me to convey my matter to.

(38)	In fact, the above Norman is a director.

(39)	Green moreover, in several of her emails, and without basis, interprets my above discussed requests as that I believe that if I make the requests, they should be honored automatically.  She persistently treated me as if I make the requests without any reasons, and that I believe that doing so is adequate.  Again I have sent her hundreds of words of detailed extensive discussion about my circumstance.  Likely via apathetic negligence she did not read what I sent to her, or only read it in a few seconds, and then made her above

erroneous conclusion for her own benefit, namely her desire to think of me as she desires, via her disability discrimination (namely her lack of acknowledgement of that I am disabled).

(40) The following is about the above discussed relationship between SHA, HUD Boston (also known as a "field office"), and HUD Headquarters (emphasis is added in bold):

"Notice PIH 2010-11 (HA)
Special Attention of:
Directors of HUD Regional and Field Offices of Public Housing;
Agencies that Administer the Housing Choice Voucher Program."

"The HUD Field Office Public Housing Director can approve exception payment standards above 110 percent to 120 percent of the FMR as a reasonable accommodation in accordance with 24 CFR § 982.503(c)(2)(ii).
**HUD Headquarters** must waive 24 CFR § 982.505(d) to allow the PHA to approve any exception payment standards higher than 120 percent of the FMR [Fair Market Rent] as a reasonable accommodation.

(41) The following continues the above (40):

"Housing Choice Voucher Program Guidebook
5.3 Higher Payment Standard as a Reasonable Accommodation[18]"

"If a payment standard higher than 120 percent of the FMR for the unit size is necessary as a reasonable accommodation, the **PHA must[19] request HUD Headquarters approval** of an exception payment standard for the unit. When HUD's approval is required, the PHA is required to provide the following documentation to HUD:
• Whether the family is an applicant or participant family;
• Number of household members including a live-in aide(s);
• Family unit size (voucher bedroom size) the family is issued under the PHA's subsidy standards or any exception to those standards granted through a reasonable accommodation request (e.g., as a reasonable accommodation, a single-person family may be issued a two-bedroom voucher due to a need to store medical equipment);
• The FMR for the smaller of the voucher bedroom size or actual unit size;
• **When either the disability or the need for the requested accommodation is not known or readily apparent, a statement from a health care provider regarding the need for the reasonable accommodation and the features of the unit (which may include its location) which meet that person's needs;**
• Contract rent and utility allowance for the accessible unit;
• A statement from the PHA that it has determined that the rent for the unit is reasonable, **and that the unit has the feature/s required to meet the needs of the person with disabilities as noted in the statement from the health care provider where such a statement is necessary;**
• The family's monthly adjusted income; and
• Proposed effective date of the new lease or actual effective date of the lease renewal.

[18] 24 CFR s982.505(d)
[19] 24 CFR s982.503(c)(3)

(42) Again, SHA, and HUD Boston, intentionally maliciously failed to follow the above protocol. HUD Boston's Valerie Tucker stated to SHA that SHA failed to submit a formal (meaning complete) request that includes the above; and SHA never did.

(43) Due to all of the above, I abruptly do not have any apartment options, and have to continue living in my abusive landlord circumstance, and enduring not only overt abuses, but severe anxiety from never knowing when it will occur again, including harassing stalking by the landlord in my hallway, causing me fear each time that I come and go from my apartment door.

(44)   SHA and HUD Boston, via their intentional unwillingness, via their disability discrimination, to accept that I am disabled, elected to evade the correct procedure regarding my circumstance, lie to me about what the procedure is, and handle the matter themselves (including HUD Boston letting SHA inappropriately handle matters that HUD Boston should have forwarded to HUD Headquarters) for the purpose of discriminatorily subverting my life.

-----------------------------

(44a)   Matt Lincoln ("Lincoln") of the Somerville Housing Authority ("SHA", which is an office of the City Of Somerville ("City")), violated his responsibility to determine Rent Reasonability per the criteria of 24 CFR 982.507, and in particular, (b)(1)(2):

> **"s982.507 Rent to owner: Reasonable rent.**
> (a) PHA [Public Housing Agency, namely Somerville Housing Authority] determination.
>    (1) Except as provided in paragraph (c) of this section, the PHA may not approve a lease until the PHA determines that the initial rent to owner is a reasonable rent.
>    (2) The PHA must redetermine the reasonable rent:
>      (i) Before any increase in the rent to owner;
>      ….
>      (iii) If directed by HUD.
> (b) Comparability. The PHA must determine whether the rent to owner is a reasonable rent in comparison to rent for other comparable unassisted units. To make this determination, the PHA must consider:
>    (1) The location, quality, size, unit type, and age of the contract unit; and
>    (2) Any amenities, housing services, maintenance and utilities to be provided by the owner in accordance with the lease."

Exhibit 1 (in my motion for preliminary injunction) of 5/19/25 is Lincoln's determination email in which he only states that the rent for the unit that I requested does not "pass Rent Reasonability". He does not provide any reasons, and maliciously fails to address how I addressed the issue of Rent Reasonability in substantial detail (Exhibit 2-3 of 5/7/25).

Exhibits 2-3 (in my motion for preliminary injunction) of 5/7/25 is my email to Lincoln with my extensive request for a particular apartment, namely 350 Main Street #611, Cambridge, MA 02142; $5,500 per month; located at the Kendall Hotel.

Lincoln, in doing this, clearly rejects, via disability discrimination in violation of 42 USC s12132, and MGL c272 s98, that my medical/disability circumstance is such that the apartment warrants a determination of Rent Reasonability. Lincoln did this to me a multitude of times in mid-late 2023, when I pleaded with him to live in a unit similar to the one that I discuss in my Exhibit 2-3 emails, and on the bases that I provided in those exhibits.

Lincoln's violative conduct is so egregious that he evades even attempting to provide a reason for his denial, likely in the hope that I would assume that he has a basis, and in order to avoid providing something for me to respond to. Surely most clients would simply assume that there is a basis, and not inquire into the USC and CFR statutes. Here Lincoln tries, via additional disability discrimination, to exploit me as someone who he gambled would not question him.

9

Exhibit 4 (in my motion for preliminary injunction) is SHA's attorney (Elliot Koch's "Koch") email-response to my criticizing Lincoln's handling of the above. Paragraphs 3, 4, 5, and 7 especially demonstrate that Lincoln and Koch maliciously ignore my thousands of words of clearly presented Disability Reasonable Accommodation requests to Lincoln and others of SHA since 3/2023, and to Koch since 9/2023. Both act as if I have never sent anything to them. This negligence is of malicious disability discrimination: They dissociate from what I have sent to them, as if I never sent anything to them, because they desire to not truly acknowledge my disabilities, nor how they undermine my life, and instead do not believe that I, with such devastating disabilities, deserve a unit of that cost, even though it is commensurate with other such units.

I will not here repeat what I state to Lincoln in my Exhibits 2-3 emails to him, and ask the court to allow me to incorporate what I write in those emails here. In those emails, I in substantial detail address all of the issues that are of the Rent Reasonableness determination; and I demonstrate in substantial detail that the above apartment, given my circumstance, and given other units in the area, indisputably meets the criterial of Rent Reasonableness.

In Exhibits 2-3, I discuss how I had to pro se sue the above hotel due to how they, like the predominance of properties, discriminated against my voucher as my source of income. Exhibit 5 (in my motion for preliminary injunction) is the judge's order ordering the hotel to rent to me.

In Exhibits 2-3, I discuss how I have been subjected to 1.5 years of immense multifaceted abuse by my current landlord; and as I have been pleading with SHA since December, I will suffer irreparable harm if I have to continue living here, including living in daily fear.

## CAUSES OF ACTION

### COUNTS 1–5

(45)  (a) I restate, and incorporate by reference, each allegation expressed above in 1 – 44.

(b) SHA violated 24 CFR s982.503(d)(5) four times in 2023 and once in 2025.

(c) Due to the aforementioned, I would like to request the following relief.

(d) Judgment on the aforementioned violations.

(e) Monetary damages.

(f) Triple damages.

(g) Punitive damages.

(h) An injunction requiring the defendant to not violate 24 CFR s982.503(d)(5) against anyone.

(i) Additional orders that the Court finds warranted.

### COUNTS 5–9

(46)  (a) I restate, and incorporate by reference, each allegation expressed above in 1 – 45.

(b) SHA violated 42 USC s1437f(o)(1)(d) four times in 2023 and once in 2025.

(c) Due to the aforementioned, I would like to request the following relief.

(d) Judgment on the aforementioned violations.

(e) Monetary damages.

(f) Triple damages.

(g) Punitive damages.

(h) An injunction requiring the defendant to not violate 42 USC s1437f(o)(1)(d) against anyone.

(i) Additional orders that the Court finds warranted.

### COUNT 10

(47)  (a) I restate, and incorporate by reference, each allegation expressed above in 1 – 46.

(b) SHA violated 42 USC s12132 a multitude of times.

(c) Due to the aforementioned, I would like to request the following relief.

(d) Judgment on the aforementioned violations.

(e) Monetary damages.

(f) Triple damages.

(g) Punitive damages.

(h) An injunction requiring the defendant to not violate 42 USC s12132 against anyone.

(i) Additional orders that the Court finds warranted.

## COUNT 11

(48)  (a) I restate, and incorporate by reference, each allegation expressed above in 1 – 47.

(b) SHA violated MGL c272 s98 a multitude of times.

(c) Due to the aforementioned, I would like to request the following relief.

(d) Judgment on the aforementioned violations.

(e) Monetary damages.

(f) Triple damages.

(g) Punitive damages.

(h) An injunction requiring the defendant to not violate MGL c272 s98 against anyone.

(i) Additional orders that the Court finds warranted.

## COUNTS 12–13

(45)  (a) I restate, and incorporate by reference, each allegation expressed above in 1 – 44.

(b) HUD Boston violated 24 CFR s982.503(d)(5) once in 2023 and once in 2025.

(c) Due to the aforementioned, I would like to request the following relief.

(d) Judgment on the aforementioned violations.

(e) Monetary damages.

(f) Triple damages.

(g) Punitive damages.

(h) An injunction requiring the defendant to not violate 24 CFR s982.503(d)(5) against anyone.

(i) Additional orders that the Court finds warranted.

## COUNTS 14–15

(46)  (a) I restate, and incorporate by reference, each allegation expressed above in 1 – 45.

(b) HUD Boston violated 42 USC s1437f(o)(1)(d) once in 2023 and once in 2025.

(c) Due to the aforementioned, I would like to request the following relief.

(d) Judgment on the aforementioned violations.

(e) Monetary damages.

(f) Triple damages.

(g) Punitive damages.

(h) An injunction requiring the defendant to not violate 42 USC s1437f(o)(1)(d) against anyone.

(i) Additional orders that the Court finds warranted.

## COUNT 16

(47) (a) I restate, and incorporate by reference, each allegation expressed above in 1 – 46.

(b) HUD Boston violated 42 USC s12132.

(c) Due to the aforementioned, I would like to request the following relief.

(d) Judgment on the aforementioned violations.

(e) Monetary damages.

(f) Triple damages.

(g) Punitive damages.

(h) An injunction requiring the defendant to not violate 42 USC s12132 against anyone.

(i) Additional orders that the Court finds warranted.

### COUNT 17

(48) (a) I restate, and incorporate by reference, each allegation expressed above in 1 – 47.

(b) HUD Boston violated MGL c272 s98.

(c) Due to the aforementioned, I would like to request the following relief.

(d) Judgment on the aforementioned violations.

(e) Monetary damages.

(f) Triple damages.

(g) Punitive damages.

(h) An injunction requiring the defendant to not violate MGL c272 s98 against anyone.

(i) Additional orders that the Court finds warranted.

### REQUEST FOR BENCH TRIAL

I would like to request a bench trial on all of the violations.

Submitted by,

*[signature]*

Dan Howitt, 6/3/25

**Certificate Of Service**
Today I served this document to the City's attorney Cindy Amara at camara@somervillema.gov, the attorney for SHA Elliott Koch at elliott@drilaw.com, and assistant director of HUD Boston Kara.E.Norman@hud.gov.

*[signature]*

Dan Howitt, 6/3/25

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Massachusetts Trial Court<br>Superior Court |  |
|---|---|---|---|
| | | **COUNTY** Suffolk Superior Court (Boston) | |

| **Plaintiff** | Dan Howitt | **Defendant:** | Somerville Housing Authority |
|---|---|---|---|
| ADDRESS: | 37 Bay State Road #5 | ADDRESS: | 30 Memorial Road |
| | Boston, MA 02215 | | Somerville, MA 02145 |
| | | | |
| **Plaintiff Attorney:** | pro se | **Defendant Attorney:** | Elliot Koch |
| ADDRESS: | | ADDRESS: | Post Office Box 301457 |
| | | | Boston, MA 02130 |
| | | | |
| BBO: | | BBO: | |

### TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| AB1 and AD1 | Tortious & Equitable Action Re Commonwealth | A | ☐ YES  ☒ NO |

*If "Other" please describe:

**Is there a claim under G.L. c. 93A?**  ☐ YES  ☒ NO

**Is there a class action under Mass. R. Civ. P. 23?**  ☐ YES  ☒ NO

### STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. (Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

### TORT CLAIMS

A. Documented medical expenses to date
    1. Total hospital expenses
    2. Total doctor expenses
    3. Total chiropractic expenses
    4. Total physical therapy expenses
    5. Total other expenses (describe below)

Subtotal (1-5): $0.00

B. Documented lost wages and compensation to date
C. Documented property damages to date
D. Reasonably anticipated future medical and hospital expenses
E. Reasonably anticipated lost wages
F. Other documented items of damages (describe below)  $1,000,000.00

Harm regarding where I current live, and harm in preventing me from moving to a medical/disability conducive rental

TOTAL (A-F): $1,000,000.00

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

Harm regarding where I current live, and harm in preventing me from moving to a medical/disability conducive rental

### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

Signature of Attorney/Self-Represented Plaintiff: X _(signed)_ pro se     Date: June 3, 2025

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.
2584CV00805

### CERTIFICATION UNDER S.J.C. RULE 1:18(5)

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney: X     Date:

# CIVIL ACTION COVER SHEET INSTRUCTIONS —
## SELECT A CATEGORY THAT BEST DESCRIBES YOUR CASE*

### AC Actions Involving the State/Municipality †*

| | | |
|---|---|---|
| AA1 | Contract Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AB1 | Tortious Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AC1 | Real Property Action involving Commonwealth, Municipality, MBTA etc. | (A) |
| AD1 | Equity Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AE1 | Administrative Action involving Commonwealth, Municipality, MBTA,etc. | (A) |

### CN Contract/Business Cases

| | | |
|---|---|---|
| A01 | Services, Labor, and Materials | (F) |
| A02 | Goods Sold and Delivered | (F) |
| A03 | Commercial Paper | (F) |
| A04 | Employment Contract | (F) |
| A05 | Consumer Revolving Credit - M.R.C.P. 8.1 | (F) |
| A06 | Insurance Contract | (F) |
| A08 | Sale or Lease of Real Estate | (F) |
| A12 | Construction Dispute | (A) |
| A14 | Interpleader | (F) |
| BA1 | Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 | Liability of Shareholders, Directors, Officers, Partners, etc. | (A) |
| BB1 | Shareholder Derivative | (A) |
| BB2 | Securities Transactions | (A) |
| BC1 | Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. | (A) |
| BD1 | Intellectual Property | (A) |
| BD2 | Proprietary Information or Trade Secrets | (A) |
| BG1 | Financial Institutions/Funds | (A) |
| BH1 | Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 | Other Contract/Business Action - Specify | (F) |

\* See Superior Court Standing Order 1-88 for an explanation of the tracking deadlines for each track designation: F, A, and X. On this page, the track designation for each case type is noted in parentheses.

†* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

‡ Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

### ER Equitable Remedies

| | | |
|---|---|---|
| D01 | Specific Performance of a Contract | (A) |
| D02 | Reach and Apply | (F) |
| D03 | Injunction | (F) |
| D04 | Reform/ Cancel Instrument | (F) |
| D05 | Equitable Replevin | (F) |
| D06 | Contribution or Indemnification | (F) |
| D07 | Imposition of a Trust | (A) |
| D08 | Minority Shareholder's Suit | (A) |
| D09 | Interference in Contractual Relationship | (F) |
| D10 | Accounting | (A) |
| D11 | Enforcement of Restrictive Covenant | (F) |
| D12 | Dissolution of a Partnership | (F) |
| D13 | Declaratory Judgment, G.L. c. 231A | (A) |
| D14 | Dissolution of a Corporation | (F) |
| D99 | Other Equity Action | (F) |

### PA Civil Actions Involving Incarcerated Party ‡

| | | |
|---|---|---|
| PA1 | Contract Action involving an Incarcerated Party | (A) |
| PB1 | Tortious Action involving an Incarcerated Party | (A) |
| PC1 | Real Property Action involving an Incarcerated Party | (F) |
| PD1 | Equity Action involving an Incarcerated Party | (F) |
| PE1 | Administrative Action involving an Incarcerated Party | (F) |

### TR Torts

| | | |
|---|---|---|
| B03 | Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 | Other Negligence - Personal Injury/Property Damage | (F) |
| B05 | Products Liability | (A) |
| B06 | Malpractice - Medical | (A) |
| B07 | Malpractice - Other | (A) |
| B08 | Wrongful Death - Non-medical | (A) |
| B15 | Defamation | (A) |
| B19 | Asbestos | (A) |
| B20 | Personal Injury - Slip & Fall | (F) |
| B21 | Environmental | (F) |
| B22 | Employment Discrimination | (F) |
| BE1 | Fraud, Business Torts, etc. | (A) |
| B99 | Other Tortious Action | (F) |

### RP Summary Process (Real Property)

| | | |
|---|---|---|
| S01 | Summary Process - Residential | (X) |
| S02 | Summary Process - Commercial/ Non-residential | (F) |

### RP Real Property

| | | |
|---|---|---|
| C01 | Land Taking | (F) |
| C02 | Zoning Appeal, G.L. c. 40A | (F) |
| C03 | Dispute Concerning Title | (F) |
| C04 | Foreclosure of a Mortgage | (X) |
| C05 | Condominium Lien & Charges | (X) |
| C99 | Other Real Property Action | (F) |

### MC Miscellaneous Civil Actions

| | | |
|---|---|---|
| E18 | Foreign Discovery Proceeding | (X) |
| E97 | Prisoner Habeas Corpus | (X) |
| E22 | Lottery Assignment, G.L. c. 10, § 28 | (X) |

### AB Abuse/Harassment Prevention

| | | |
|---|---|---|
| E15 | Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 | Protection from Harassment, G.L. c. 258E | (X) |

### AA Administrative Civil Actions

| | | |
|---|---|---|
| E02 | Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 | Certiorari Action, G.L. c. 249, § 4 | (X) |
| E05 | Confirmation of Arbitration Awards | (X) |
| E06 | Mass Antitrust Act, G.L. c. 93, § 9 | (A) |
| E07 | Mass Antitrust Act, G.L. c. 93, § 8 | (X) |
| E08 | Appointment of a Receiver | (X) |
| E09 | Construction Surety Bond, G.L. c. 149, §§ 29, 29A | (A) |
| E10 | Summary Process Appeal | (X) |
| E11 | Worker's Compensation | (X) |
| E16 | Auto Surcharge Appeal | (X) |
| E17 | Civil Rights Act, G.L. c.12, § 11H | (A) |
| E24 | Appeal from District Court Commitment, G.L. c.123, § 9(b) | (X) |
| E94 | Forfeiture, G.L. c. 265, § 56 | (X) |
| E95 | Forfeiture, G.L. c. 94C, § 47 | (F) |
| E99 | Other Administrative Action | (X) |
| Z01 | Medical Malpractice - Tribunal only, G.L. c. 231, § 60B | (F) |
| Z02 | Appeal Bond Denial | (X) |

### SO Sex Offender Review

| | | |
|---|---|---|
| E12 | SDP Commitment, G.L. c. 123A, § 12 | (X) |
| E14 | SDP Petition, G.L. c. 123A, § 9(b) | (X) |

### RC Restricted Civil Actions

| | | |
|---|---|---|
| E19 | Sex Offender Registry, G.L. c. 6, § 178M | (X) |
| E27 | Minor Seeking Consent, G.L. c.112, § 12S | (X) |

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES    ☐ NO |

## STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF —** On the face of the Civil Action Cover Sheet (or on attached additional sheets, if necessary), the plaintiff shall state the facts on which the plaintiff relies to determine money damages. A copy of the completed Civil Action Cover Sheet, including the statement concerning damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

**DUTY OF THE DEFENDANT —** If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with the defendant's answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## IF THIS COVER SHEET IS NOT FILLED OUT THOROUGHLY AND
## ACCURATELY, THE CASE MAY BE DISMISSED.