UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DAN HOWITT,

 Plaintiff,

  v.

SOMERVILLE HOUSING AUTHORITY,
et al.,

 Defendants.

  Civil Action No. 1:25-cv-11896-IT

MEMORANDUM & ORDER

May 6, 2026

TALWANI, D.J.

  Pending before the court is Plaintiff Dan Howitt's Emergency Motion for Injunctive Relief ("Emergency Motion") [Doc. No. 72], Amended Emergency Motion for Preliminary Injunction ("Amended Emergency Motion") [Doc. No. 82], and Motion for Leave to File Under Seal an Alternative Housing Option ("Motion for Leave to File") [Doc. No. 88], all filed *pro se*. For the reasons that follow, the motions are DENIED.

**I. Overview**

  Plaintiff, a recipient of a Section 8 Housing Choice Voucher ("HCV"), brings claims against Defendant Somerville Housing Authority ("SHA"), the public housing authority that administers his Section 8 housing voucher, for allegedly violating federal regulations relating to such housing assistance, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and Mass. Gen. Laws ch. 272, § 98, and for causing intentional infliction of emotional

distress. See Second Am. Compl. [Doc. No. 81].[1] Plaintiff alleges that since at least 2024 he has sought to move from his current housing arrangement. Id. at 5. Plaintiff seeks to move to an apartment that can accommodate his disability-related and medical needs.[2]

To approve a voucher-recipient's request to rent a particular unit, SHA must first conduct a rent reasonableness assessment for the unit. 24 C.F.R. § 982.507. A reasonable rent is "one that does not exceed the rent charged for comparable, unassisted units in the same market area." Def.'s Opp'n Ex. 1 ("SHA Administrative Plan"), at ECF 7 [Doc. No. 94]. If the unit satisfies rent reasonableness requirements, it must still meet payment standards under federal law. See 24 C.F.R. § 982.503. If required as a reasonable accommodation, a public housing authority may establish an exception payment standard to the applicable fair market rent ("FMR"). Id. § 982.503(d)(5). However, only the Department of Housing and Urban Development ("HUD"), and not the public housing authority, may approve an exception above 120% of the applicable FMR. Id.

Plaintiff asserts in the Emergency Motion [Doc. No. 72] that after he located a unit that satisfied rent reasonableness requirements, SHA failed to promptly forward his request for an exception payment standard to HUD as was needed to secure the unit. He asserts that SHA has a conflict of interest where Plaintiff has sued SHA and alleges that SHA engaged in severe abuse against him. He asks the court to grant preliminary injunctive relief, transferring his case to the

---

[1] Plaintiff also asserts claims against McCright & Associates, LLC. Those claims are the subject of a Motion to Dismiss [Doc. No. 97] and will be addressed in a separate order.

[2] Plaintiff states that he has "Asperger's Syndrome, which is now classified as autism-spectrum disorder," and that, because of this disability, he has significant sensitivity to noise. Am. Emergency Mot. 8–9 [Doc. No. 82]. Plaintiff has supported his motions with medical information [Doc. No. 92], [Doc. No. 100], [Doc. No. 101], that the court allowed to be filed under seal. See Order [Elec. Order 78].

Boston Housing Authority and authorizing funding for a more expensive apartment rental than might otherwise be allowed.[3]

Plaintiff's <u>Amended Emergency</u> <u>Motion</u> [Doc. No. 82] asserts that SHA engaged in unlawful practices when conducting its "Rent Reasonable Valuations" for two units at the Kendall Hotel in Cambridge, Massachusetts. <u>Id.</u> at 1. Plaintiff seeks to preliminarily enjoin SHA to approve rental amounts for the units.

Plaintiff's <u>Motion for Leave to File</u> [Doc. No. 88] seeks leave to file under seal an alternative housing option, at a monthly rate of $9,000, for the court to consider in connection with the pending motions.

For the reasons below, Plaintiff's motions are DENIED.

## II.    Standard of Review

The issuance of a preliminary injunction before a trial on the merits can be held is an "extraordinary remedy" that shall enter only if a plaintiff makes a clear showing of entitlement to such relief. <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7, 22 (2008). In evaluating a motion for a preliminary injunction, the court considers four factors:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the

---

[3] Plaintiff also asks for an award of $50,000 in damages, but a damage award may not be obtained through a motion for a preliminary injunction. See <u>K-Mart Corp. v. Oriental Plaza, Inc.</u>, 875 F.2d 907, 914 (1st Cir. 1989) (finding no irreparable harm, a required showing for a preliminary injunction, where "money damages will fully alleviate harm"). Further, the <u>Emergency Motion's</u> [Doc. No. 72] request for preliminary relief as to dismissed-Defendants Elliott Koch (SHA's attorney) and Department of Housing and Urban Development ("HUD") is moot where they are no longer parties to this action. See Electronic Clerk's Notes [Doc. No. 54] (noting Plaintiff's voluntary dismissal of claims against Attorney Koch without prejudice); Electronic Order [Doc. No. 76] (granting HUD's <u>Motion to Dismiss</u> [Doc. No. 21] and denying Plaintiff's <u>Motion for Leave to File a Second Amended Complaint</u> [Doc. No. 63] as to HUD); <u>see</u> <u>also</u> Mem. [Doc. No. 95].

movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

Esso Standard Oil Co. v. Monroig–Zayas, 445 F.3d 13, 17–18 (1st Cir.2006) (quoting Bl(a)ck Tea Soc'y v. City of Boston, 378 F.3d 8, 11 (1st Cir. 2004)).

The first factor is the most important: if the moving party cannot demonstrate a likelihood of success on the merits, "the remaining become matters of idle curiosity." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002). "To demonstrate likelihood of success on the merits, plaintiffs must show 'more than mere possibility' of success—rather, they must establish a 'strong likelihood' that they will ultimately prevail." Sindicato Puertorriqueño de Trabajadores v. Fortuño, 699 F.3d 1, 10 (1st Cir. 2012) (quoting Respect Maine PAC v. McKee, 622 F.3d 13, 15 (1st Cir. 2010)).

### III.    Discussion

Plaintiff has not demonstrated that he is likely to succeed on his claims. Accordingly, the court denies Plaintiff's motions for emergency relief.[4]

#### A.    *Plaintiff's Emergency Motion*

##### 1.    Background

On December 16, 2025, Plaintiff emailed David Hospedales, a leased housing supervisor with SHA, requesting that SHA "urgently process [a] one bedroom apartment for HUD approval[.]" Emergency Mot. Ex. 1, at 2 [Doc. No. 72-1]. Plaintiff explained that he had found an owner of a one-bedroom apartment that was willing to accept his voucher and that the owner

---

[4] Finding that Plaintiff has not met his burden to show he is likely to succeed on his claims, the court need not evaluate the other three injunctive relief factors. See New Comm Wireless Servs., Inc., 287 F.3d at 14.

was seeking to rent the apartment as of January 1, 2026. Id. That same day, Hospedales informed

Plaintiff that while the unit was "rent reasonable[,] . . . [it] is well out of [Plaintiff's] price range,

even with an Exceptional Payment Standard (EPS) for 120% FMR." Emergency Mot. Ex. 2, at 4.

Hospedales explained that "this EPS would result in a household rent burden of 158.57%, which

[SHA] cannot allow under Section 8 guidelines." Id. Hospedales noted that either the landlord

would need to reduce his asking rent to $2,954 or lower (from a $4,000 asking price), or HUD

would need to approve an EPS percentage higher than 120% for SHA to approve the unit. Id.;

Emergency Mot. ¶ 4 [Doc. No. 72]. Hospedales concluded the email by directing Plaintiff: "if

you wish for [SHA] to submit your request to HUD, please provide any documentation you feel

is necessary so that we may do so." Emergency Mot. Ex. 2, at 4 [Doc. No. 72-1].

The following day, Plaintiff emailed Hospedales, reiterating the urgency of his request,

and providing documentation related to his medical issues. Emergency Mot. Ex. 3, at 5 [Doc.

No. 72-1]. Later the same day, he sent a further email to Hospedales attaching a complaint

against a landlord of another apartment in the same building, who Plaintiff asserted had

previously declined renting an apartment to him. Emergency Mot. Ex. 4, at 7 [Doc. No. 72-1].

On Sunday, January 4, 2026, Plaintiff followed up by email, asking Hospedales if he had

sent his emails and documents to HUD for consideration. Emergency Mot. Ex. 5, at 8 [Doc. No.

72-1]. Hospedales responded the following day, stating that Elliott Koch (SHA's attorney) "is

handling the submission of this request to HUD" and instructing Plaintiff to contact Koch.

Emergency Mot. Ex. 6, at 9 [Doc. No. 72-1].

On January 7, 2026, after confirming that HUD had not yet received the SHA request,

Plaintiff emailed SHA again regarding the request. Emergency Mot. Ex. 9, at 12 [Doc. No. 72-1].

On January 8, 2026, HUD confirmed that it had received an EPS waiver request from SHA that day, and that HUD's Boston office would need to review and send to HUD headquarters for a final review and decision. Emergency Mot. Ex. 12, at 15 [Doc. No. 72-1]. Plaintiff avers it can take thirty days for HUD to render a decision on such a request. Emergency Mot. ¶ 10 [Doc. No. 72].

On January 30, 2026, the owner of the proposed unit replied to Plaintiff noting that the apartment had been rented and removed the listing. Second Am. Compl. 7 [Doc. No. 81].

According to Plaintiff's Motion for Leave to File [Doc. No. 88], Plaintiff has now located another property that would cost $9,000 monthly that he seeks to have SHA and HUD approve.

### 2. Likelihood of Success

Plaintiff points to the purported conflict of interest of SHA and to SHA's delay in submitting his request to HUD to support his request for preliminary relief. Emergency Mot. ¶ 1 [Doc. No. 72]. The former provides no support for any relief, where the only purported conflict identified is Plaintiff's own action against the SHA.

As to the latter, Plaintiff's motion makes no attempt to tie the delay in forwarding his request to HUD to the elements of any of his underlying claims.

Moreover, even if Plaintiff had demonstrated a likelihood of success on his underlying claims, he has not demonstrated that the preliminary injunctive relief he seeks could be awarded. Plaintiff points to no right to obtain (nor authority for this court to grant) a transfer so that Boston Housing Authority, instead of SHA, may act as his public housing authority. He also points to no authority that would permit this court to order SHA to authorize funding for a more expensive apartment rental, where that determination needs to be made by HUD.

Accordingly, the Emergency Motion [Doc. No. 72] motion is DENIED and the Motion for Leave to File [Doc. No. 88] is DENIED as moot.

B.    *Plaintiff's Amended Emergency Motion*

Plaintiff contends that Defendant incorrectly calculated rent reasonableness in violation of 28 C.F.R. § 982.507. Am. Emergency Mot. 1–2 [Doc. No. 82]. In doing so, Plaintiff alleges Defendant concurrently violated Section 12132 of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and Mass. Gen. Laws ch. 272, § 98, Massachusetts's public accommodation law. Id. Plaintiff requests that the court accordingly require that Defendant "approve the rental amounts for the #611 ($5,500) and #312 ($4,100) apartments" at the Kendall Hotel. Id. at 3.

As a threshold matter, Plaintiff makes no argument to suggest that a private right of action exists allowing a plaintiff to bring suit for a violation of 28 C.F.R. § 982.507. See Buck v. Am. Airlines, Inc., 476 F.3d 29, 33 (1st Cir. 2007) ("Regulations alone cannot create private rights of action; the source of the right must be a statute."). The court, however, need not reach that issue. Even if Plaintiff could bring such a suit, Plaintiff would be unlikely to succeed on his claims that Defendant's rent reasonableness calculation violated the regulation or that Defendant discriminated against Plaintiff in violation of state and federal law.

1.  Background

Plaintiff asserts that SHA has discriminated against Plaintiff on account of his disability, and that, as part of this discrimination, has illegally administered 28 C.F.R. § 982.507.

The alleged unlawful actions relate to the following events:

In 2024, Plaintiff identified two units at the Kendall Hotel as suitable for his needs: a studio apartment and a one-bedroom unit. Second Am. Compl. 2–3 [Doc. No. 81]. He asserts that the studio apartment has a monthly rent of $4,000 to $4,100 and the one-bedroom unit has a

monthly rent of $4,900 to $5,500 (the "Kendall Hotel units"). Am. Emergency Mot. 3 [Doc. No. 82].[5]

Plaintiff notes that the Kendall Hotel is a newer building and provides fully carpeted apartments and hallways, furnished units, free cleaning services and breakfast to residents, and 24/7 on-site staff. Am. Emergency Mot. 1–4 [Doc. No. 82]. Pets are not permitted on the property. Id. at 6. And the units are close to Massachusetts General Hospital (where Plaintiff receives medical care). Id. at 10. These features, Plaintiff alleges, would help meet his medical, disability, and financial needs, where Plaintiff has difficulty traveling, does not own furniture, and has significant sensitivity to noise. Id. at 9–10.

As noted, before a public housing authority ("PHA"), such as Defendant, can approve a voucher-recipient's request to rent a particular unit, it must first determine that the unit is being offered at a reasonable rent. 24 C.F.R. § 982.507(a)(1). To make this determination, the PHA must compare the proposed unit to other comparable unassisted units. Id. § 982.507(b). When comparing units, federal regulations require PHAs to consider "(1) [t]he location, quality, size, unit type, and age of the contract unit; and (2) [a]ny amenities, housing services, maintenance and utilities to be provided by the owner in accordance with the lease." Id. Per SHA policy, the proposed unit need not be identical to comparison units. SHA Administrative Plan ECF 10 [Doc. No. 94]. When comparison units are not identical to the proposed unit, a PHA may make upward or downward adjustments to the rents of comparison units based on the market value of the

---

[5] An email submitted by Plaintiff indicates that on March 16, 2025, the Kendall Hotel's interim director of sales noted that the studio apartment's rent would be $4,000–$4,100 and the rent for the one-bedroom unit would be $4,900 or $5,000. Final Addendum to Am. Emergency Mot. for Prelim. Inj. Ex. 1 [Doc. No. 83-1]. SHA asserts that the actual rates for these units are $1,400 higher, and that the quoted rates are based on a side agreement, inconsistent with program guidelines, where Plaintiff's family would pay the $1,400. Def.'s Opp'n 2 [Doc. No. 94].

nonidentical factors. Id. at ECF 10, 12 [Doc. No. 94]. The rent of the proposed unit would then be compared to the adjusted rents of the comparable units. Id. at ECF 12. Not all differences between units require adjustments. Id. For instance, SHA notes "the presence or absence of a garbage disposal may not affect the rent in some market areas." Id.

In June 2025, Defendant assessed the rent reasonableness of the studio unit and found that upper bound of the reasonable rent range for comparable units was $3,677.00. Exs. for Am. Emergency Mot. 37 [Doc. No. 68-1]. The asking rent of the proposed studio unit at that time was $4,100. Id. In August 2021, Defendant assessed the proposed one-bedroom unit and found that that upper bound of the reasonable rent range was $4,682.50, while the asking rent of the proposed unit was $5,500. Id. at 2.

Plaintiff requested that Defendant recalculate its assessment of the Kendall Hotel units to account for the additional features described above, which Plaintiff considered to be relevant amenities. In reply, on October 15, 2025, David Hospedales noted that he would not consider such features to assess rent reasonableness because the features were "not features generally offered by long-term rental units, but rather short-term rentals (hotel/motel, extended stay, etc.)." Id. at 6 [Doc. No. 68-1]. Still, Defendant noted that it had taken all such features into account and provided the unit with an "Excellent" rating for an additional 10% value to the unit. Id.

In January 2026, Defendant assessed the rent reasonableness of the units relying on their purported discounted rents. Still, the units were not considered to be rent reasonable. For the proposed studio unit, Defendant found the upper bound of the range to be $3,987.80, while the asking rent was $4,000. Final Addendum to Am. Emergency Mot. for Prelim. Inj. Ex. 2, at ECF 1 [Doc. No. 83-2]. For the one-bedroom unit, the limit was $4,560.26, while the asking rent was $4,900. Id. at ECF 2.

Defendant's rent reasonable valuations considered various amenities of the Kendall Hotel units and the comparison units. As to the Kendall Hotel Units, SHA considered that the units had ceiling fans, a dishwasher, garbage disposal, onsite laundry, a microwave, a refrigerator, a stove, and cable. Id. at ECF 1. Defendant considered similar amenities for the comparison units. Id.

Where Defendant has not found that either of the Kendall Hotel units was rent reasonable, Plaintiff has been unable to rent either unit or to seek from HUD an exception payment standard to the applicable fair market rent if needed.

## 2. Likelihood of Success

Plaintiff asserts that SHA "engaged in severely illegal administrations of 24 [C.F.R. §] 982.507, namely their Rent Reasonability Valuations, and that [SHA] concurrently violated 42 [U.S.C. §] 12132 and [Mass. Gen. Laws. ch.] 272[, §] 98 in doing so." Am. Emergency Mot. 1 [Doc. No. 82]. Plaintiff has failed to show a likelihood of success on any of these claims.

### a.    Violation of Massachusetts Public Accommodation Law

Mass. Gen. Laws ch. 272, § 98 prohibits "distinction, discrimination or restriction on account of . . . any physical or mental disability . . . relative to the admission of any person to, or his treatment in any place of public accommodation, resort or amusement[.]" Mass. Gen. Laws. ch. 272, § 98.

Plaintiff asserts that Defendant discriminated against him on account of his disability by improperly calculating rent reasonableness, which barred him from renting the apartment he selected. Plaintiff, however, does not allege that such discrimination was related to his admission, or his treatment, in a place of public accommodation. Mass. Gen. Laws. ch. 272, § 98. Accordingly, Plaintiff's state law discrimination claim cannot succeed.

b.      Violation of the ADA

Title II of the ADA establishes that a "qualified individual with a disability" shall not, "by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; see Sosa v. Massachusetts Dep't of Correction, 80 F.4th 15, 30 (1st Cir. 2023). "To establish a prima facie case of a Title II violation," a plaintiff must therefore demonstrate that:

> (1) he is a "qualified individual with a disability"; (2) he was "excluded from participation in, or denied the benefits of a public entity's services, programs, or activities or was otherwise discriminated against"; and (3) this exclusion, denial of benefits, or discrimination was "by reason of [his] disability."

Sosa, 80 F.4th at 30 (quoting Snell v. Neville, 998 F.3d 474, 499 (1st Cir. 2021)). A claim under Title II may be grounded in "one of three theories of discrimination: (1) intentional discrimination or disparate treatment; (2) failure to make a reasonable accommodation; [or] (3) disparate impact." Id. (citations omitted). Plaintiff asserts that Defendant has intentionally discriminated against him. Am. Emergency Mot. 3 [Doc. No. 82] (asserting Defendant's administration of HUD regulations is "calculated" and "based on their disablist discrimination").

The court accepts for the purposes of this motion that Plaintiff is a qualified individual with a disability. Plaintiff, however, has not shown a likelihood of success in establishing that he was denied a benefit or otherwise discriminated against by Defendant because of his disability.

Plaintiff contends SHA deliberately and improperly conducted its rent reasonable valuation of the Kendall Hotel units, which, he argues, constitutes discrimination. When conducting a rent reasonable valuation, if a comparable unit is inferior, Defendant will provide an upward adjustment to the asking rent of the comparable unit. Def.'s Opp'n ECF 14 [Doc. No. 94] (rent reasonable valuation for Kendall Hotel one-bedroom unit). The adjusted monthly rent is

11

then used to determine reasonableness. SHA Admin. Plan ECF 12 [Doc. No. 94]. A higher adjustment to the rent of comparable units results in higher rents being used to calculate what is reasonable.

Plaintiff notes Defendant has declined to count as amenities numerous features of the Kendall Hotel units, preventing a higher adjustment. Am. Emergency Mot. 1–2 [Doc. No. 82]. Defendant maintains it cannot make adjustments for amenities based on these features, where these features are characteristic of short-term hotel accommodations, not long-term rental units. Def.'s Opp'n 3 [Doc. No. 94]. Rent reasonableness comparisons, Defendant notes, "must be grounded in the actual long-term rental market." Id.

Further, Defendant notes it did recognize that the Kendall Hotel unit provided these features, just not as amenities. Id. Defendant rated the Kendall Hotel units as "Excellent," which resulted in a 10% upward adjustment to the asking rent of the inferior comparison units, which Defendant rated as "Average." Id.; see also id. at ECF 14 (rent reasonable valuation for Kendall Hotel one-bedroom unit noting each comparison unit received a "Condition & Quality" adjustment).

Plaintiff acknowledges SHA made this adjustment but contends that this is "only an extremely minimal and superficial increase in valuation." Am. Emergency Mot. 6 [Doc. No. 82]. He contends that "a $930 additional increase in the Rent Reasonability valuation is warranted for" the Kendall Hotel one bedroom unit. Id.

That Plaintiff rejects how the units' features were considered does not change that Defendant did consider them. Accordingly, Plaintiff has not demonstrated a likelihood of success on his claim that Defendant denied Plaintiff a benefit or otherwise discriminated against him, much less that Defendant's actions were because of Plaintiff's disability.

Second, Plaintiff contends Defendant has selected units that are not comparable to the Kendall Hotel units to conduct its rent reasonable valuation. Am. Emergency Mot. 7 [Doc. No. 82]. Yet, SHA policy does not require that comparison units be identical. See SHA Admin. Plan ECF 10 [Doc. No. 94]. Instead, when units are not identical, Defendant will make upward or downward adjustments to the rents of the non-identical comparison units. Id. Plaintiff disagrees with numerous adjustments made by Defendant, but, as noted, a disagreement with Defendant's methodology alone does not establish that Defendant discriminated against Plaintiff because of his disability.

Plaintiff's motion, construed liberally, also alleges that Defendant failed to make reasonable accommodations. See Am. Emergency Mot. 8 [Doc. No. 82]. This claim too cannot succeed. "A Title II claim premised on a failure to provide a reasonable accommodation–or, in other terminology, to make reasonable modifications" alleges that: "(1) due to the claimant's disability, he needs an individualized change to a public entity's facially neutral policies, practices, or procedures if he is to effectively access some opportunity; but (2) the public entity unjustifiably failed to make that change." Sosa, 80 F.4th at 31.

Here, Defendant did make a modification based on Plaintiff's disability-related needs by making a 10% upward adjustment to its comparison units. To the extent that Plaintiff argues that Defendant should have made higher adjustments, the court finds that Plaintiff is not likely to succeed on his claim, where Defendant had already implemented a rent adjustment and conducted numerous rent reasonable valuations demonstrating that there were less expensive, comparable units available to Plaintiff.

For these reasons, Plaintiff has not demonstrated that he is likely to succeed on his discrimination claims.

## IV.    Conclusion

For the foregoing reasons, Plaintiff Dan Howitt's <u>Emergency Motion for Injunctive Relief Against SHA (Somerville Housing Authority)</u> [Doc. No. 72] and <u>Amended Emergency Motion for Preliminary Injunction</u> [Doc. No. 82] are DENIED. Plaintiff's <u>Motion for Leave to File Under Seal</u> [Doc. No. 88] is DENIED as moot.

IT IS SO ORDERED.

May 6, 2026                                        /s/ Indira Talwani
                                                   United States District Judge