US DISTRICT COURT MASSACHUSETTS

_____

Dan Howitt,

      Plaintiff,                                               1:25CV11896IT

v

HUD et al,

      Defendants.

_____

**MOTION FOR LEAVE TO FILE ADDENDUM TO:**

**EMERGENCY FRCP 65 MOTION OF PLAINTIFF FOR TEMPORARY RESTRAINING ORDER AGAINST DEFENDANT SHA AND ITS ATTORNEY ELLIOTT KOCH**

**Introduction**

I apologize for not including this in my memorandum (Document 108) and exhibits filing (Document 109), but I often have difficulty remembering the entirety of a matter, including crucial aspects of it. The following is the addendum that I ask for leave to file, and it consists of a combination of memorandum and exhibits.. If the court is able to accept this filing as my addendum, I will wait to be notified about that.

Summary of addendum: Due to Koch's harm, my since-3/20/26 EPS request for a particular apartment has not only been suspended, but even before that was neglected via tortious neglect. Below is my memorandum and exhibits.

I ask that SHA and Koch be restrained to arrange for someone else at SHA to continue processing the previously discussed, and below discussed, EPS request, since the apartment will surely be rented at any time, and since porting my case to Boston Housing Authority will only cause delays that will result in the loss of the rare apartment. As I present below, on 3/20/26, I received approval by SHA for the apartment as Rent Reasonable, and Koch has not submitted an updated EPS request to HUD Boston, and instead engaged in the below presented Pattern & Practice of tortious negligent harm.

**(a)**        Since 3/20/26, I requested approval from SHA for a particular apartment; (b) SHA (David Hospedales) approved it (at $4,000) as Rent Reasonable on 3/20/26 (below exhibit);

1



**(c)**          On 3/27/26, HUD Boston (below exhibit) confirmed that my EPS request was sent to HUD

Headquarters:



**(d)**          On 4/16/26, SHA (Matt Lincoln) emailed me the 2 page HUD Headquarters denial letter (below

2 exhibits) of Nicholas Bilka:

 **Gmail**

Dan Howitt <dhowitt@alumni.colgate.edu>

---

**FW: <External Message> Request for Exceptional Payment Standard: Somerville HA Participant Daniel Howitt**

---

Matthew Lincoln <matthewl@sha-web.org>                          Wed, Apr 15, 2026 at 10:36 AM
To: Dan Howitt <dhowitt@alumni.colgate.edu>
Cc: Elliot Koch <Elliott@drilaw.com>, David Hospedales <davidh@sha-web.org>

Hi Dan,

We've received the attached response from HUD regarding your request for an Exceptional Payment Standard.

Thanks,

Matt Lincoln

---



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC  20410-5000

OFFICE OF PUBLIC AND INDIAN HOUSING

April 14, 2026

J. Elliott Koch
Counsel
Somerville Housing Authority
30 Memorial Road
Somerville, MA  02145-1704

Dear Mr. Koch:

On March 23, 2026, the Department of Housing and Urban Development (HUD) received a request from Somerville Housing Authority (SHA) for approval under Title 24 Code of Federal Regulations (CFR) § 982.503(d)(5) for an exception payment standard. This regulation states that if the family includes a person with disabilities and requires a payment standard above the basic range, as a reasonable accommodation for such person, the public housing agency (PHA) may establish a payment standard for the family of not more than 120 percent of the fair market rent (FMR) or the small area FMR (SAFMR), if applicable. A PHA may establish a payment standard greater than 120 percent of the FMR/SAFMR by submitting a request to HUD.

SHA requested an exception payment standard as a reasonable accommodation on behalf of Housing Choice Voucher (HCV) participant, Dan Howitt. Mr. Howitt is requesting a reasonable accommodation exception payment standard of $3,983 to lease a one-bedroom unit located at 105 Broad St, #2D, Boston, MA 02110.

As confirmed in a letter written by a medical provider at Massachusetts General Hospital (MGH), Mr. Howitt is a person with disabilities who receives care from multiple departments at MGH and needs to live within walking distance to MGH due to transportation limitations caused by his disability. The provider recommends that he live in a modern building, ideally with carpeting in his unit and throughout the building, in order to minimize noise transfer and reduce his disability-related symptoms. The provider also states that ideally the building have on-site staff in case of potential problems related to his disability. SHA states that, to the best of their knowledge, the unit at 105 Broad Street, #2D has onsite staff with modern construction, located near where Mr. Howitt receives medical care, and there is a lack of more affordable units in the area that meet Mr. Howitt's disability-related needs. SHA does not confirm that the unit and building have carpet.

The gross rent for the unit in which Mr. Howitt wishes to live is $4,071, which includes a contract rent of $4,000 and a utility allowance of $71. The requested unit is 161 percent of the applicable FMR. SHA confirmed that the rent of the unit has been determined to be reasonable.

In its review of the provider's letter and the documentation provided by SHA, HUD does not agree that a nexus exists between Mr. Howitt's disability and the features of the unit he is requesting. The SHA states that the building has modern construction, but did not explain or provide documentation to demonstrate that the building, originally built in 1857, has modern construction elements or carpeting required to meet Mr. Howitt's disability-related needs. Furthermore, information found online describes the units as having high ceilings, exposed brick, oversized windows overlooking the Financial District, and open concept floor plans, all of which are features not typically associated with the sound minimizing Mr. Howitt's provider states he needs due to his disability. SHA states that, to the best of their knowledge, there is a lack of more affordable housing in the area that meets Mr. Howitt's needs, however, does not provide documentation to support this statement, such as evidence that such lower cost units are not available, or explanations as to why other lower cost units also located within the same radius from MGH as the unit Ms. Howitt selected (1.2 miles) do not meet his disability-related needs. Due to the factors described here, HUD is concerned that approving the exception payment standard request for this unit would result in SHA paying a significantly higher housing assistance payment than is necessary to meet Mr. Howitt's disability-related needs.

For the reasons stated above, this exception payment standard request is denied. HUD encourages SHA to work with Mr. Howitt to find housing that would meet his disability-related needs at a lower cost. Mr. Howitt may submit a request for an exception payment standard in the future, if needed as a reasonable accommodation.

Should you have any questions regarding this matter, please contact RAEPS@hud.gov. Any changes to the family's request or new requests must be submitted by SHA to HUD.

Sincerely,

Nicholas Bilka

Nicholas Bilka
Acting Associate Deputy Assistant Secretary
Office of Housing Voucher Programs

**(e)**         A crucial aspect of the above denial is the total rent for that zip code, despite that adjacent zip codes (blocks away) have $1,000+ higher payment standards. On 4/29/26, I email updated Koch, SHA's Lincoln, and HUD Boston that the rent was reduced by $200 total (below second email), which is highly significant, and which warrants sending HUD Boston a second EPS request. Koch did not reply; and as I already discussed, I then emailed him on 4/30/26 the distressed email asking for action, and on 4/30/26 I sent HUD Boston a subpoena, and on 4/30/26 he emailed me that he was already in the process of drafting a voucher termination letter. Moreover, as is implied in my below second email, I previously (second below exhibit) on 4/16/26 updated him that it was reduced by $100, and I informed him of a multitude of errors that Bilka made. Koch did not send any updates to HUD Boston.



## Urgent Re: Request for Exceptional Payment Standard: Somerville HA Participant Daniel Howitt

Dan Howitt <dho_____@_____>                              Thu, Apr 30, 2026 at 12:51 PM
To: "Elliott Koch, Esq." <elliott@drilaw.com>, "Norman, Kara E" <kara.e.norman@hud.gov>
Cc: Matthew Lincoln <matthewl@sha-web.org>

Mr Koch
You have had one full week now.  Have you sent my new material to hud Boston yet, if so, send me what you sent them, if so, send me the date that you sent them it.  If not send me the date that you expect to send them it.
Mr Koch, why have you apparently not sent my simple material to Hud Boston immediately.  I am in danger of losing the apartment.  Mr. Koch, tomorrow is Friday, the end of the week. Why have you apparently not sent my simple material to hud boston despite having one full week to do so.  Mr. Koch when do you plan to send my material to Hud Boston?  Please reply immediately today.  Mr. Koch is am in danger of losing the apartment.
Mr. Koch i am in danger of losing the apartment.
Mr koch i am in danger of losing the apartment.
Dan Howitt

On Wednesday, April 29, 2026, Dan Howitt  wrote:
> Mr. Koch and Ms. Norman,
>
> The cost was reduced another $100, and is now $3,800, and here is the updated listing.
> https://www.zillow.com/homedetails/99-105-Broad-St-2D-Boston-MA-02110/90135981_zpid/
> Could you update your communications to HUD Headquarters to show that the above is the new rental amount?
> Could you confirm receiving this email on 4/30/26 in the morning, and confirm that you will be updating my case in the above way?
>
> I have been looking at other apartments and this is the best option overall.
>
> Dan Howitt
>
> On Fri, Apr 24, 2026 at 3:29 PM Dan Howitt  wrote:
>> Mr. Koch,
>> The new letter of today is meant to serve as the current/operative letter for all disability accommodation housing requests from MGH Back Bay.  No other letters will be provided by the office because of the all encompassing generality of the current/operative letter, and I am directed to not make any more requests of that office for any other letters etc.  If however I have additional medical records _____
>> _____ I will send copies of those to you.
>> Dan Howitt
>>
>> On Fri, Apr 24, 2026 at 3:25 PM Elliott Koch, Esq. <elliott@drilaw.com> wrote:
>>> Dan,
>>>
>>> I appreciate that you sent a letter from today from Michelle Morris, MD, as well as a April 22, 2026 prescription for occupational therapy from Rebecca Lee, PA.
>>>
>>> These however don't address my previously raised issue with the authenticity of your unsigned April 14, 2026 letter. Do you plan on submitting an authenticated copy of that April 14, 2026 letter, or in some other way providing verification that the letter was submitted by a specific healthcare professional at MGH Back Bay? If so when do you anticipate providing that?
>>>
>>> I would also request you stop your continued use of abusive and harassing language toward me.
>>>
>>> Thank you



**(f)** On 4/20/26 (below two email exhibits, in reverse order), I emailed HUD Boston (Norman) asking if she received an updated EPS request from SHA; she replied that she did not; on 4/23/26, I pleaded with Koch about this in detail, yet again (I had been emailing and calling him since 4/16/26) which is 30+ of such emails of my pleadings since 2024); on 4/23/26 he, via passive abuse, replied feigning ignorance of what I was referring to: Since December 2025, I have had only one EPS request; there is no unclarity about this. I then (above first exhibit of #c) escalated my pleading yet again with my distressed email, and earlier that day I sent the previously mentioned subpoena to HUD Boston. He then embarked on terminating my voucher.

**M Gmail**

Dan Howitt <dho⬛⬛⬛⬛⬛⬛⬛>

## Re: Request for Exceptional Payment Standard: Somerville HA Participant Daniel Howitt

Elliott Koch, Esq. <elliott@drilaw.com>                                         Thu, Apr 23, 2026 at 4:00 PM
To: Dan Howitt <dh⬛⬛⬛⬛⬛⬛⬛>
Cc: Kara E <Kara.E.Norman@hud.gov>

Hi Dan,

Which unit would this be for? You've mentioned a few units recently.

Thank you

> On Apr 23, 2026, at 3:57 PM, Dan Howitt <dh⬛⬛⬛⬛⬛⬛⬛> wrote:

Mr. Koch,
Ms. Norman below stated today that she has not received the 2nd request that she states is necessary in her below email of "On Fri, Apr 17, 2026 at 9:27 AM". Could you let me know if you could send her the 2nd request by today or tomorrow morning. I will loose the apartment if it is not made quickly. I provided the request last week, and now it is the end of the day Thursday this week. I left you some voicemails about this and you did not return my calls.
Dan

On Thu, Apr 23, 2026 at 3:53 PM Norman, Kara E <Kara.E.Norman@hud.gov> wrote:

Hi Dan,

I have not received a new request from SHA.

-Kara

From: Dan Howitt <dh⬛⬛⬛⬛⬛⬛⬛>
Sent: Thursday, April 23, 2026 3:22 PM
To: Norman, Kara E <Kara.E.Norman@hud.gov>
Subject: Re: <External Message> Re: Request for Exceptional Payment Standard: Somerville HA Participant Daniel Howitt

Ms. Norman,

I'm following on my below email about if you have received the new request.

Dan

Hi Dan,

I believe the SHA was closed on Friday and yesterday was a state holiday.

Thanks,

Kara

---

From: Dan Howitt <dh[                    ]>
Sent: Monday, April 20, 2026 4:31 PM
To: Norman, Kara E <Kara.E.Norman@hud.gov>
Subject: Re: <External Message> Re: Request for Exceptional Payment Standard: Somerville HA Participant Daniel Howitt

Ms. Norman,

I've spend many days since last week contacting SHA (two people) and their attorney, and no one has replied to me. Have they submitted my new request to you? I will loose the apartment if there are delays.

Dan

**(d)** HUD Headquarters Mr. Bilka added $71 to the total amount, for a utility allowance, in error, because Koch did not inform him that essentially all utilities are included, as is shown in the apartment listing, including:

> included in rent, Gas included in rent, Heating included in rent, Highway Access, Hot water included in rent, In Unit, Internet included in rent, Marina, Medical Facility, Park, Pets - No,

As such the total amount that was being considered is $271 over what is should be. Koch did not update HUD Boston, and as such, HUD Boston did not update HUD Headquarters.

**(e)** I telephoned Koch on the day that SHA's Lincoln sent me the above denial, and Koch purposefully erroneously told me that if I want to dispute the denial, that the above Bilka is who I should contact; however as Bilka states in his above letter (#d) in the last paragraph, a change to a EPS request, or a new request, "must be submitted by SHA to HUD":

> Should you have any questions regarding this matter, please contact RAEPS@hud.gov. Any changes to the family's request or new requests must be submitted by SHA to HUD.

As such, Koch embarked on another form of passive abuse, namely by directing me to do something that is not allowed by HUD nor the voucher program, and by tortiously neglecting his responsibility. And I did proceed to email Bilka, spending hours carefully writing a presentation; and he of course did not reply.

8

**(f)**        While I wait for the court for my motion to file medical records under seal, and I have not yet received a statement from my doctor's office, I will state the following:  After Koch emailed me demonstrating his violations of HIPPA, I telephoned my doctor's office immediately on that day, and was told the following:  That "someone" called asking for one of my medical records; they had no verification of who the person was; the person was told that no information about any aspect of a patient is provided to anyone, except a patient, and that even a patient can only request records by efile (MGH Patient Gateway), or in-office, or in writing via a complex form that is provided; patients via telephone first have to verify who they are, and only very limited information is provided to even patients by telephone.  Moreover, when someone calls that office, their always is an outgoing message asking the caller to select options, and the only options are if one is a patient, seeking to be a patient, a medical provider, and a pharmacist.  As such, Koch must have, in violation of HIPPA, selected an option that misrepresents himself.  Despite this, Koch has persisted to state that the office provided him with information about me.  Massachusetts General Hospital never does this because all staff know about HIPPA, and find such calls to be in severe opposition to HIPPA.  If even a family member of mine called with questions about me, they would be immediately declined

Regardless of all of the above, my doctor proceeded on 4/24/26 to write what is to serve as a final all encompassing general letter for all of my EPS housing requests, as I discuss in my Documents 108-109.  Koch still neglected to update HUD Boston as HUD requires of SHA, both about this, the reduction of rent, the erroneous utility allowance amount that raises the total rent amount that HUD considers, the disability provisions of the apartment (namely to correct Bilka's misunderstanding of the apartment), and my own updated statement (all of the above).  Now another 2 full weeks have elapsed, and Koch stated on 5/5/26 in Exhibit 6 of Document 109 that he has suspended my seeking any apartment.  Again, as I presented in my recent-past filings, with exhibits, Koch in December 2025 to January 2026 engaged in the same negligence regarding the first apartment in over 1 year to accept my voucher, namely his via passive abuse waiting 25 days to send my simple documents and his letter to HUD Boston, resulting in the loss of the apartment.

Under the penalties and pains of perjury, submitted by,

Dan Howitt, 5/8/26

**Certificate Of Service and LC Rule 7.1 Compliance:**  Today I served this document via efile to the defendants, and I presented this discussion to HUD and SHA via email and voicemail to 5/5/26 and neither replied.